# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Dorie Shoutz Jessen, *et al.*,

|                     |              |                                |
|---------------------|--------------|--------------------------------|
|                     |              | Civ. No. 14-1065 (RHK/JSM)     |
|                     | Plaintiffs,  | **MEMORANDUM OPINION**         |
| v.                  |              | **AND ORDER**                  |
|                     |              |                                |
| Blue Earth County, *et al.*, |     |                                |
|                     | Defendants.  |                                |

Lorenz F. Fett, Jr., Sonia L. Miller-Van Oort, Jonathan A. Strauss, Sapientia Law Group, Minneapolis, Minnesota, for Plaintiffs

Jamie L. Guderian, Joseph E. Flynn, Jardine Logan & O'Brien PLLP, for Defendant Blue Earth County

Jon K. Iverson, Stephanie A. Angolkar, Susan M. Tindal, Iverson Reuvers Condon, for Defendants City of Mankato and City of North Mankato

## INTRODUCTION

In this action, Dorie Shoutz Jessen, Jeremiah Shoutz Jessen, Mark Steven Shoutz, Vickie Faye Shoutz, and Casey Steven Shoutz ("Plaintiffs") allege government employees and the cities and counties employing them violated their rights under the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. §§ 2721-2725, by accessing or allowing access to their driver's license information from the Driver and Vehicle Services ("DVS") database for an impermissible purpose. Defendants Blue Earth County, City of Mankato ("Mankato"), and City of North Mankato ("North Mankato") now move to dismiss the action for failure to state a claim, or in the alternative to sever the claims

against them.  For the following reasons, the Motions will be granted in part and denied in part.

## BACKGROUND

Plaintiffs allege the following facts in their Complaint.

Dorie Shoutz Jessen lives in Waverly, Minnesota.  (Compl. ¶¶ 36, 42.)  She is married to Plaintiff Jeremiah Shoutz Jessen; her parents are Plaintiffs Mark Shoutz and Vickie Shoutz, and her brother is Plaintiff Casey Shoutz.  In 2013, Plaintiffs requested audits of their DVS records, which they received in 2014. [1]  (Id. ¶¶ 276-81.)  The audits revealed that unidentified employees of Blue Earth County, Mankato, and North Mankato had accessed their DVS records approximately 105 times between 2003 and 2012.  (Id. ¶ 189.)  Plaintiffs filed this action on April 11, 2014, against unknown John and Jane Doe individuals who accessed their information ("Individual Does") and their supervisors ("Supervisor Does"), Blue Earth County, Mankato, North Mankato, unknown municipalities ("Entity Does"), Ramona Dohman and Michael Campion, in their individual capacities as Commissioner of the Minnesota Department of Public Safety ("Commissioner Defendants"), [2] and unknown employees of the Minnesota Department of Public Safety ("DPS Does").

---

[1] These records contain the driver's name, date of birth, driver's license number, address, photo, weight, height, social security number, health and disability information, and eye color.  (Compl. ¶ 139.)

[2] Michael Campion was the former Commissioner, and Ramona Dohman is the current Commissioner.

Plaintiffs allege that their DVS records[3] could not have been accessed for legitimate law-enforcement purposes.  Plaintiffs' primary allegation is based on Dorie's romantic history.  Plaintiffs hypothesize that the anonymous employee(s) who accessed their information was one person, Dorie's former fiancé Kurt Konz.  Dorie worked in Blue Earth County as a 911 operator from 2001-03 and lived with Kurt.  After Dorie broke off their engagement in 2003, but before she moved out, Kurt videotaped her sleeping and showering.  (Id. ¶ 129.)  Although no Plaintiff has had contact with Kurt since 2003, that year unknown individuals began accessing Dorie's records.  (Id. ¶ 142.)  Plaintiffs allege no one else in Blue Earth County is interested in them.  They claim Kurt's curiosity, romantic attraction, or obsession with Dorie had driven him to repeatedly access her and her family's information.  (Id. ¶ 192.)  Plaintiffs believe Kurt continues to work for Blue Earth County and can access the Mankato and North Mankato computer systems because all three entities share a 911 call center and jail.  (Id. ¶¶ 183-84.)

Plaintiffs further allege that even if Kurt is not the employee accessing their records, no one is accessing their records with a permissible law-enforcement purpose.  None of the Plaintiffs has been charged with a crime or been involved in a legal proceeding in Blue Earth County, Mankato, or North Mankato.  (Id. ¶¶ 169, 176, 181.)  None has had any reason to be a suspect in an investigation there.  (Id. ¶¶ 169, 176, 181.)  None has sought law-enforcement assistance or witnessed a crime in the jurisdictions.  (Id. ¶ 286.)  Plaintiffs have rarely been in Blue Earth County, Mankato, or North

---

[3] DVS is a division of the DPS.

Mankato in the last decade, and only Casey (who visited in January 2014 and had no contact with law enforcement) has been there since 2008.  (Id. ¶¶ 55, 73, 100, 111, 122.) Plaintiffs were searched for by name, not driver's license number.  (Id. ¶¶ 3-7, 195.) Many times, the records of different members of Dorie's family were accessed at nearly the same time, and they were sometimes obtained at unusual hours, including in the middle of the night.  (Id. ¶¶ 160-80.)

Plaintiffs assert one claim against all Defendants, violation of the DPPA, which Mankato and North Mankato now move to dismiss, arguing that the statute of limitations bars the claim.  Blue Earth County also filed a Motion to Dismiss, arguing that 1) the statute of limitations bars portions of the claim arising before April 11, 2010; 2) Plaintiffs failed to allege facts showing Blue Earth County *used* their information; 3) Plaintiffs failed to allege facts showing Blue Earth County obtained, disclosed, or used their personal information for an *unpermitted purpose*; and 4) Blue Earth County employees are entitled to qualified immunity.  Blue Earth County also argues that any remaining portions of the claim should be severed.  The Motions, having been fully briefed and the Court having heard argument on September 4, 2014, are now ripe for disposition.

## STANDARD OF DECISION

The Supreme Court set forth the standard for evaluating a motion to dismiss in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 547.  A "formulaic recitation of the elements of a cause of action" will not suffice.  Id. at 555.  "The plausibility

standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 556).

When reviewing a motion to dismiss, the Court "must accept [the] plaintiff's specific factual allegations as true but [need] not . . . accept a plaintiff's legal conclusions." <u>Brown v. Medtronic, Inc.</u>, 628 F.3d 451, 459 (8th Cir. 2010) (citing <u>Twombly</u>, 550 U.S. at 556). The complaint must be construed liberally, and any allegations or reasonable inferences arising therefrom must be interpreted in the light most favorable to the plaintiff. <u>Twombly</u>, 550 U.S. at 554-56. A complaint should not be dismissed simply because the Court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. <u>Id.</u> at 556. Accordingly, a well-pleaded complaint will survive a motion to dismiss even if it appears that recovery is very remote and unlikely. <u>Id.</u> "Finally, the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." <u>Braden v. Wal-Mart Stores, Inc.</u>, 588 F.3d 585, 594 (8th Cir. 2009).

## ANALYSIS

### I.      The DPPA

Congress enacted the DPPA in 1994 to protect individuals from the abusive use of their personal information in motor-vehicle records. The act generally prohibits individuals from obtaining or disclosing information from an individual's motor vehicle record, §§ 2721-22, but it lists fourteen (14) uses that would not violate the statute,

including use by a government or law-enforcement agency in carrying out its functions,
§ 2721(b).  The DPPA authorizes a civil action against alleged violators.  § 2724(a).

## II.    Mankato and North Mankato

Mankato and North Mankato assert the statute of limitations bars Plaintiffs' claim
against them.  The DPPA does not include a statute of limitations, but all parties agree the
applicable statute of limitations is found in 28 U.S.C. § 1658(a), which provides
"[e]xcept as otherwise provided by law, a civil action arising under an Act of
Congress . . . may not be commenced later than 4 years after the cause of action accrues."
The parties disagree, however, on when the cause of action accrued here.  Mankato and
North Mankato argue Plaintiffs' cause of action accrued at the time the alleged violations
occurred (the "occurrence rule").  Plaintiffs, on the other hand, argue the cause of action
accrued when Plaintiffs knew, or should have known, that they had a claim (the
"discovery rule").

The issue of which rule applies in a DPPA case—the occurrence rule or the
discovery rule—has arisen repeatedly in this Court, and judges have unanimously
adopted the occurrence rule.  See, e.g., Mallak v. Aitkin Cnty., Civ. No. 13-2119, 2014
WL 1285807, at *4-6 (D. Minn. Mar. 31, 2014) (Frank, J.); Potocnik v. Carlson, __ F.
Supp. 2d __, 2014 WL 1206403, at *8-11 (D. Minn. Mar. 24, 2014) (Schiltz, J.); Mitchell
v. Aitkin Cnty., Civ. No. 13-2167, 2014 WL 835129, at *4 (D. Minn. Mar. 4, 2014)
(Ericksen, J.); Rasmusson v. Chisago Cnty., 991 F. Supp. 2d 1065, 1079-83 (D. Minn.
2014) (Nelson, J.); Kost v. Hunt, 983 F. Supp. 2d. 1121, 1126-1127 (D. Minn. 2013)
(Ericksen, J.).

The undersigned recently reached the same conclusion in <u>Shambour v. Carver County</u>, holding that the occurrence rule, not the discovery rule, applied in DPPA cases. Civ. No. 14-566, 2014 WL 3908334, at *4-5 (D. Minn. Aug. 11, 2004).  The Court perceives no reason to reach a different result here.  Applying that rule, the statute of limitations bars Plaintiffs' claim based on actions allegedly occurring before April 11, 2010, four years before this case was filed.  The allegations against Mankato and North Mankato all precede that date.  (Def. Exs. 1-5).  Therefore, the Court will dismiss Mankato and North Mankato as Defendants.

### III.   Blue Earth County

Blue Earth County raises five arguments in support of its Motion to Dismiss: 1) portions of Plaintiffs' claim allegedly arising before April 11, 2010, are barred by the statute of limitations; 2) Plaintiffs failed to allege facts showing Blue Earth County *used* their information for an unpermitted purpose; 3) Plaintiffs failed to allege facts showing Blue Earth County obtained, disclosed, or used their personal information for an *unpermitted purpose*; 4) Blue Earth County personnel are entitled to qualified immunity; and 5) any remaining portions of the claim against Blue Earth County should be severed. The Court will address each contention in turn.

### A.  *Statute of Limitations*

Blue Earth County argues that all conduct occurring before April 11, 2010, should be dismissed based on the statute of limitations.  As discussed above, the four-year statute of limitations under the DPPA begins accruing at the time the alleged violation occurs.

Therefore, Plaintiffs' claim based on violations occurring before April 11, 2010, will be dismissed.

      *B. Use*

      A DPPA claim has three elements: 1) a person knowingly obtains, discloses, or uses personal information 2) from a motor vehicle record 3) for a purpose not permitted. § 2724. Blue Earth County argues that the accessed information had to be actively *used*—not just obtained—for an unpermitted purpose for a DPPA violation to lie. This Court has previously held to the contrary. See, e.g., Shambour, 2014 WL 3908334, at *3; Mallak, 2014 WL 1285807, at *7; Smythe v. City of Onamia, Civ. No. 12-3149, 2013 WL 2443849, at *6 (D. Minn. June 5, 2013) (Montgomery, J.) ("[S]imply retrieving records without a permitted purpose is a violation."). Blue Earth County makes a novel, and strained, textual argument to circumvent this precedent. It argues that § 2724(a) (the section creating the civil cause of action) implicitly incorporates an earlier section of the law, § 2722(a), and therefore data must be actively used to satisfy the third element of the claim. The Court disagrees. First, Blue Earth County fails to explain why § 2724(a) incorporates § 2722(a). In fact, a plain reading of the statute indicates that the two provisions are independent, as they cover distinctly different topics: § 2724(a) *authorizes* a civil cause of action for a violation of the DPPA, while § 2722(a) explains *who* can violate the DPPA. Second, Blue Earth County cites no case holding that § 2724(a) incorporates § 2722(a). As such, Blue Earth County's argument lacks merit.

### C.  Plausibility of an Unpermitted Purpose

Blue Earth County next argues Plaintiffs have failed to plausibly argue the DVS

information was used for an *unpermitted purpose*.  Blue Earth County's arguments

purport to speak for multiple parties: the County itself, and the Supervisor Does and

Individual Does.

### 1.  Blue Earth County and Supervisor Does

The DPPA authorizes suit against "[a] person who knowingly obtains, discloses,

or uses personal information . . . ." § 2724(a).  This language plainly means that the

defendant *itself* must have acted to be liable under the DPPA.  Shambour, 2014 WL

3908334, at *3; see also Gulsvig v. Mille Lacs Cnty., Civ. No. 13-1309, 2014 WL

1285785, at *5-6 (D. Minn. Mar. 31, 2014) (Tunheim, J.); Bass v. Anoka Cnty., 998

F. Supp. 2d 813, 820 (D. Minn. Feb. 21, 2014) (Doty, J.); Nelson v. Jesson, Civ. No. 13-

340, 2013 WL 5888235 (D. Minn. Nov. 1, 2013) (Kyle, J.).[4]

Plaintiffs have failed to plead a plausible claim that Blue Earth County or the

Supervisor Does *themselves* obtained, disclosed, or used personal information for an

unpermitted purpose.  Plaintiffs allege that Blue Earth County provided computers for

employees to access DVS information and failed to control illegal access to the extent

that it became a custom or practice.  Even if true, this is not sufficient to plead a claim

they obtained, disclosed, or used personal information themselves.  Plaintiffs also allege

---

[4] Blue Earth County therefore cannot be liable on a theory of vicarious liability. *But see* Rasmusson, 991 F. Supp. at 1083 (suggesting, without holding, that counties may be vicariously liable under the DPPA for acts of their employees).  The letters the Court obtained from counsel on this matter (Doc. Nos. 44 & 45) do not change the Court's opinion.

Blue Earth County "authorized, directed, ratified, approved, acquiesced in, committed or participated in obtaining, disclosing, or using of Platintiffs' private personal information by Individual Defendants." (Compl. ¶ 400). This simply recites the language of the statute without providing any supporting factual allegations lifting the claim to a level of plausibility. See Twombly, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do."). Common sense suggests, and nothing in the Complaint alleges otherwise, that Blue Earth County provided DVS access to law-enforcement personnel for law-enforcement reasons. Therefore, Plaintiffs fail to plausibly allege that Blue Earth County or Supervisor Does personally used, disclosed, or obtained personal information for a non-permitted purpose. As such, this Court will grant Blue Earth County's Motion to dismiss for failure to state a claim as to Blue Earth County and the Supervisor Does.

   2.   *Individual Does*

   The Individual Does[5] argue that Plaintiffs fail to plausibly allege the lookups by individuals were for a purpose not permitted by the statute. The Plaintiffs have the burden of alleging facts plausibly supporting their claim that the Individual Does obtained, disclosed, or used motor vehicle records for a purpose not permitted by the statute. Mitchell, 2014 WL 835129, at *4 ("Mitchell's complaint must satisfy her burden at the pleading stage by alleging an impermissible purpose with adequate facts to support the allegation."); see also Tichich v. City of Bloomington, Civ. No. 14-298, 2014 WL

---

[5] Blue Earth County purports to represent the Individual Does (Mem. of Law in Support of Mot. To Dismiss or Sever in lieu of Answer of Blue Earth County, 2 n.1), and Plaintiffs have not suggested this is improper.

3928530, at *4 (D. Minn. Aug. 12, 2014) (Doty, J.).  But Plaintiffs do not have to specify the exact purpose for which the Individual Does accessed the motor vehicle information, so long as they plausibly allege it was not for a purpose permitted by the statute. Kampschroer v. Anoka Cnty., Civ. No. 13-2512, 2014 WL 3013101, at *10 (D. Minn. July 3, 2014) (Nelson, J.) ("At this early stage of litigation, Plaintiffs need not plead—and indeed, do not know without discovery—the precise impermissible purpose for which their information was accessed.").  But see Kendall v. Anoka Cnty., Civ. No. 14-247, 2014 WL 3955265, at *4-5 (D. Minn. Aug. 13, 2014) ( Doty, J.).  Here Plaintiffs have done so.

Plaintiffs' Complaint alleges that their records were accessed 105 times between 2003 and 2011.  In that time, not one Plaintiff had been arrested, charged with a crime, involved in a legal proceeding, or had reason to be investigated in Blue Earth County. Plaintiffs, except Casey (who had no contact with law enforcement in his 2014 visit), had not even been there in at least six years.  While the sheer amount of lookups alone does not plausibly suggest an impermissible purpose, see, e.g., Bass v. Anoka Cnty., 998 F. Supp. 2d at 821, given the lack of contact Plaintiffs had with the justice system and Blue Earth County itself, it is hard to see what law-enforcement purpose these lookups could have served.  Moreover, Individual Does looked up Plaintiffs by their names, not their license plate numbers, further suggesting the purpose was not law enforcement or another permissible purpose.  Individual Does occasionally looked up Plaintiffs at odd hours of the night, and sometimes looked up Plaintiffs in quick succession, one after another.  Additionally, Plaintiffs go beyond simply alleging the lookups were not for a

permissible purpose and hypothesize about the actual purpose of the lookups, which is unrelated to any permissible purpose.  Dorie and Kurt's abrupt and bad breakup and Kurt's alleged access to DVS records from Blue Earth County, combined with the Plaintiffs' lack of contact with Blue Earth County, gives a plausible—though by no means certain—account of who might have had the motive and access to look up Plaintiffs over the decade.

These facts differ from other cases in this Court holding that plaintiffs failed to allege an unpermitted purpose.  Plaintiffs here allege more than just frequent access of records, access at odd hours, and an unblemished criminal record, which wasn't enough to convince the court in Kendall, 2014 WL 3955265, at *4; see also Tichich, 2014 WL 3928530, at *4.  And Plaintiffs do not suffer the same fate as the plaintiff in Ray v. Anoka County, who failed to allege any connection between the unnamed defendant, who she speculated was her ex-husband, and the jurisdictions from which her records were accessed.  Civ. No. 14-539, 2014 WL 2511087, at *5 (D. Minn. June 4, 2014) (Magnuson, J.).  Rather, Plaintiffs allege a series of facts more akin to cases where the Court found the allegation plausible.  See Shambour, 2014 WL 3908334, at *4 (finding a plausible DPPA claim where records were searched 59 times, Plaintiff had no criminal or traffic contact, the searches were at odd times, Plaintiff was well-known in her community, and her information was searched by name not license plate number); Kampschroer, 2014 WL 3013101, at *10-11; Mallak, 2014 WL 1285807, at *8-9 (finding a plausible DPPA claim where records were searched 190 times, Plaintiff had no criminal record, Plaintiff was well known in community, searches were done by name not license

plate number, and searches were conducted at 3:00 and 4:00 a.m.); Smythe, 2013 WL 2443849, at *6 (finding a plausible DPPA claim where "[Defendant] knew [Plaintiff's] approximate whereabouts and had no personal safety concerns" and Plaintiff "detail[ed] a long and complicated history between the two"). Therefore, Plaintiffs' claim plausibly alleges that the Individual Does violated the DPPA by obtaining their motor vehicle records for an impermissible purpose. The Court declines to dismiss their claim on this ground.

### D. Qualified Immunity

Next, Blue Earth County argues the Individual Does are entitled to qualified immunity because the law was not clearly established at the time of the alleged violations. A defendant is entitled to qualified immunity unless 1) plaintiffs have alleged facts that make out a violation of plaintiff's constitutional or statutory rights and 2) the right was clearly established at the time of defendant's conduct. Pearson v. Callahan, 555 U.S. 223, 232 (2009); see also Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

The Individual Does are not entitled to qualified immunity at this stage. First, Plaintiffs have alleged facts that, if true, make out a violation of their statutory rights under the DPPA. The language of the statute establishes the statutory right. § 2742; see also Mallak, 2014 WL 1285807, at *13 ("The DPPA is clear that accessing driver's license information without a permissible purpose violates the law"). The Court has already rejected the argument that "obtain, disclose, or use" requires doing something affirmative with the information beyond merely accessing it. Shambour, 2014 WL 3908334, at *3. Second, this right was clearly established at the time of the alleged

violations.  "The DPPA has been in place since 1994.  By [April 2010], [Individual Does] would have been on notice of the DPPA and its prohibition of the access of driver's license information for impermissible purposes."  Mallak, 2014 WL 1285807, at *13; see also Collier v. Dickinson, 477 F.3d 1306, 1309-10 (11th Cir. 2007) ("We find that the plain language of the DPPA clearly, unambiguously, and expressly creates a statutory right which may be enforced by enabling aggrieved individuals to sue persons who disclose their personal information in violation of the DPPA.").  The Individual Does are not entitled to qualified immunity at this juncture and the Court declines to dismiss the Individual Does on this ground.

   *E.  Severance*

   Lastly, Blue Earth County moves to sever any remaining claims—in practice, the claim against Individual Does—so that each allegedly improper lookup becomes its own action.  It argues that each alleged violation is a separate occurrence that has distinct issues of fact and that joinder would be prejudicial.

   Federal Rule of Civil Procedure 20(a)(2) provides that defendants may be joined in one action if 1) "any right to relief is asserted against them . . . with respect to or arising out of the same transaction, occurrence, or series of transactions of occurrences" and 2) "any question of law or fact common to all defendants will arise in the action." What counts as the same transaction or occurrence should be broadly interpreted.  Mosley v. Gen. Motors Corp., 497 F.2d 1330, 1333 (8th Cir. 1974) ("[A]ll 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence."); see also United Mine Workers of Am. v.

Gibbs, 383 U.S. 715, 724 (1966) ("[T]he impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."). Additionally, the rule should be interpreted "to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." Mosley, 497 F.2d at 1332.

Here, the Complaint alleges violations arising out of the same transaction or occurrence, broadly conceived. The Complaint alleges that the Individual Does accessed Plaintiffs' records from the same places—Blue Earth County, Mankato, and North Mankato—for nearly ten years. These occurrences would thus be logically related even if Plaintiffs had not plausibly hypothesized that one particular person was likely responsible for them. Furthermore, different Plaintiffs' records were sometimes accessed in rapid succession, suggesting the alleged violations are related to one another. See Kampschroer, 2014 WL 3013101, at *10. The alleged violations have a common question of law: the DPPA. And as in Shambour, "litigating [the allegations] jointly serves the interest of judicial economy while minimizing delay, inconvenience, and expense overall," without obviously prejudicing the Individual Does. 2014 WL 3908334, at *6. Therefore, the Court declines to sever the claim against the Individual Does.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that the Motions to Dismiss (Doc. Nos. 13, 20) are **GRANTED IN PART** and **DENIED IN PART** as follows:

15

1. Mankato's and North Mankato's Motion (Doc. No. 13) is **GRANTED** and Plaintiffs' claim against these Defendants is **DISMISSED WITH PREJUDICE**, and

2. Blue Earth County's Motion (Doc. No. 20) is **GRANTED IN PART AND DENIED IN PART**.  The Motion is **GRANTED** as to Blue Earth County, Supervisor Does, and Individual Does with regard to occurrences before April 11, 2010, and Plaintiffs' claim against these Defendants is **DISMISSED WITH PREJUDICE**.  The Motion is otherwise **DENIED**.  Severance is **DENIED**.[6]

Dated: October 10, 2014

                                        s/Richard H. Kyle
                                        RICHARD H. KYLE
                                        United States District Judge

---

[6] The Complaint remains pending against Individual Does who allegedly accessed Plaintiffs' motor-vehicle records on or after April 11, 2010.